959 F.2d 237
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Phillip R. LAWRENCE, Defendant-Appellant.
 No. 91-5707.
 United States Court of Appeals, Sixth Circuit.
 April 8, 1992.
 
 Before BOYCE F. MARTIN, Jr., MILBURN and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a criminal case involving the use of a firearm "during and in relation to" a drug trafficking offense in violation of 18 U.S.C. § 924(c). The appellant contends that the district court made six errors that require reversal of the conviction and one that requires resentencing. We find the appellant's arguments unpersuasive, and we shall affirm both the conviction and the sentence.
 
 
 2
 * Pursuant to a warrant for his arrest, the defendant, Phillip Lawrence, was taken into custody on the day after he assaulted a man named Charles Vaden with a .357 magnum pistol. Lawrence was not carrying the gun at the time of his arrest, so the police obtained a warrant to search his home for it. Upon executing the search warrant, the police found eight weapons in various locations, including five in a centrally located gun box in the foyer, one in a zippered bag in the kitchen, and the .357 pistol underneath a pillow on a couch in the living room. The eighth weapon, an AR-15 assault rifle, was found in the trunk of a car parked behind the house.
 
 
 3
 In the attic of the house the police found 18 marijuana plants, along with grow lights, automatic timers, and plant food. They also found a number of marijuana seedlings in the kitchen and in the backyard.
 
 
 4
 Lawrence was charged with manufacturing marijuana, a violation of 18 U.S.C. § 841, and with using one or more firearms during and in relation to a drug offense, a violation of 18 U.S.C. § 924(c). Neither the indictment nor the general verdict form submitted to the jury specified which particular gun or guns Lawrence had "used." The first count of the indictment referred simply to "one or more firearms, to wit, a 'Marlin' brand .22 caliber rifle, 'Remington' brand shotguns, 'Colt' brand .223 caliber rifles, and a 'Smith and Wesson' brand .357 caliber revolver...." Lawrence did not object to the form of the indictment or verdict until after his conviction.
 
 
 5
 Prior to trial, Lawrence moved for a severance so that he could testify on the firearm charge without waiving his right not to testify on the drug charge. The district court denied the motion.
 
 
 6
 At the close of the government's case, Lawrence moved for acquittal as to the firearm charge. The motion was denied. No such motion was made as to the drug charge.
 
 
 7
 After the jury found him guilty, Lawrence indicated that he wished to make a statement to a probation officer regarding acceptance of responsibility. First, however, he wanted the district court to issue an order preventing the government from using the statement in its case-in-chief in the event that a new trial was ordered on appeal. The district court denied Lawrence's request for such an order and imposed a sentence that did not reflect a reduction in the defendant's offense level for acceptance of responsibility. This appeal followed.
 
 II
 
 8
 Section 924(c) provides, in pertinent part, as follows:
 
 
 9
 "(1) Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years...."
 
 
 10
 The district court gave the following instruction on the elements of § 924(c):
 
 
 11
 "the Government must prove each of the following two elements beyond a reasonable doubt:
 
 
 12
 (1) The defendant, Lawrence, committed the drug trafficking offense as charged in Count Two of the Indictment, and
 
 
 13
 (2) During and in relation to the commission of that crime, the defendant knowingly used or carried a firearm."
 
 
 14
 The district court went on to explain that the weapon must "be used to protect the drugs or otherwise facilitate a drug transaction", but the court gave no other instructions on the meaning of "in relation to." Lawrence requested an instruction to the effect that the statute is not violated if the presence of firearms is merely inadvertent or unintended and that the jury must find that the firearms were an integral part of the drug offense. Lawrence contends that the rejection of his proposed instruction constituted reversible error. We disagree.
 
 
 15
 The instruction given by the district court required the jury to find that Lawrence knowingly used or carried a firearm during and in relation to the drug crime charged in count two of the indictment. This instruction precluded the jury from convicting on the basis of inadvertent or unintended possession unrelated to any drug crime. The district court made it clear that the "uses or carries a firearm" requirement is met where the firearms "are to be used to protect the drugs or otherwise facilitate a drug transaction." It was unnecessary to dilate further upon the meaning of the phrase "during and in relation to." "The phrase in relation to speaks for itself; any further explanation is superfluous." United States v. Malin, 908 F.2d 163, 168 (7th Cir.), cert. denied, 112 L.Ed.2d 544, 111 S.Ct. 534 (1990).
 
 
 16
 It was not error to deny the request for an instruction that the presence of the firearms needed to be an "integral part of the drug crime." Under the "drug fortress" theory that has been adopted by this circuit, the jury need only find that firearms actually or constructively possessed by the defendant "are to be used to protect the drugs or otherwise facilitate a drug transaction." United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989); United States v. Acosta-Cazares, 878 F.2d 945 (6th Cir.), cert. denied, 493 U.S. 899 (1989). The jury was instructed accordingly.
 
 
 17
 Lawrence contends that because the indictment and the verdict failed to specify which particular gun was used or carried in relation to his drug offense, he was denied a unanimous verdict unless the record shows that all the guns were so used. He relies in this connection on United States v. Theodoropoulos, 866 F.2d 587 (3d Cir.1989).
 
 
 18
 In Theodoropoulos, the defendant was charged with one count of using a firearm during and in relation to a drug trafficking offense. The indictment did not specify which of four firearms found in the defendant's apartment had been used. The trial court instructed the jury that any of the firearms could support a conviction under § 924(c), but that the jury would have to agree unanimously on which of the firearms was used. The verdict did not specify which of the four guns was used, and the court of appeals concluded that the conviction could uphold only if all of the guns could have been deemed to have been used in relation to the drug trafficking offense. Id. at 597.
 
 
 19
 As far as the law of the Sixth Circuit is concerned, the proposition that unanimity is required not only on the fact that a gun was used but also on the identity of the particular gun in question appears highly dubious, given our decision in United States v. Robison, 904 F.2d 365 (6th Cir.), cert. denied, 112 L.Ed.2d 323 (1990). There we upheld a conviction where the indictment had specified the use of a particular gun, but the court had instructed the jury that it need not find that this was in fact the gun used; "it is sufficient that the defendant carried any firearm." Id. at 369 (emphasis supplied).
 
 
 20
 Be that as it may, Lawrence is in no position to challenge his conviction under the theory adopted in Theodoropoulos because that theory was never presented to the trial court. Lawrence did not request a jury instruction based on Theodoropoulos, he did not object to the form of the indictment, and he did not object to the use of a general verdict form. Any error was therefore waived. See United States v. Costner, 359 F.2d 969, 974 (6th Cir.1966).
 
 
 21
 Lawrence contends next that the search which resulted in the discovery of the guns and drugs was conducted pursuant to a defective warrant. Although the officer whose affidavit supported the warrant knew that Lawrence had threatened Mr. Vaden with a gun the day before and knew that Lawrence lived at the house referred to in the affidavit, the officer failed to state that the house was Lawrence's. (Lawrence stipulated that he was the sole resident of the house searched and that he was seen with the .357 pistol on the day before the search.) The district court concluded that the affidavit was insufficient to support the warrant because it did not specify that the house to be searched was Lawrence's, but the court went on to hold that the search was nonetheless lawful under the good faith rule applied by the Supreme Court in United States v. Leon, 468 U.S. 897 (1984).
 
 
 22
 Lawrence argues that United States v. Baxter, 889 F.2d 731 (6th Cir.1989), makes Leon inapplicable to cases such as this one, where the officer who furnished the defective affidavit was the same officer who executed the warrant. In Baxter, however, the officer misrepresented to the magistrate the nature and character of the source of his information; he did not disclose that his source was an anonymous tipster who had not provided reliable information in the past and whose reliability was not adequately established by corroborating facts. The officer's misrepresentations increased the likelihood that the magistrate would find probable cause. In the case at bar, by contrast, there was no knowing misstatement calculated to mislead the magistrate. The failure to specify that the house to be searched belonged to Lawrence was not a "knowing or reckless falsity." The omission of the fact that Lawrence lived at the house did not make it more likely that the magistrate would find probable cause.
 
 
 23
 Exclusion of probative evidence is not required where the officer has acted in good faith and exclusion "results in '[p]enalizing the officer for the magistrate's error, rather than his own.' " Id. at 734 (quoting Leon, 468 U.S. at 921). If there was a deficiency in the affidavit in this case, it did not result from a knowing misstatement or reckless falsity on the part of the officer; any error in issuing the warrant was the magistrate's and not the officer's. The good faith exception therefore applies, and the district court acted correctly in refusing to suppress the evidence.
 
 
 24
 Lawrence contends that the district court erred in denying his motion to sever the drug count from the firearm count so that he could testify in his own defense as to the former without waiving his Fifth Amendment rights as to the latter. The two counts clearly "are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan," Fed.R.Crim.P. 8(a), so they are properly joined unless Rule 14 requires severance. Rule 14 provides: "If it appears that a defendant is prejudiced by a joinder of offenses ... the court may order an election or separate trials of counts ... or provide whatever other relief justice requires." Fed.R.Crim.P. 14.
 
 
 25
 In support of his claim of prejudice, Lawrence relies on Cross v. United States, 335 F.2d 987 (D.C.Cir.1964). The defendant in that case was found to have been unfairly prejudiced by the district court's refusal to sever two separate counts of robbery covering two distinct offenses, where the defendant testified as to one count and was subjected to damaging cross-examination as to the second count. He was acquitted on the first count and convicted on the second. The court of appeals reversed the conviction, concluding that Cross had been prejudiced within the meaning of Rule 14 by the cross-examination as to the second count. Cross was able to point to specific testimony in the record that aided his defense as to the first count and particular testimony elicited on cross-examination that was prejudicial as to the second count.
 
 
 26
 In contrast to Cross, there is no indication in the instant case that Lawrence would really have helped himself by testifying as to the firearm count or that such testimony would have hurt him further as to the drug count. Lawrence chose not to testify at all, and he was convicted on both counts. He made no proffer of testimony, so we can only speculate as to what might have happened had he taken the stand.
 
 
 27
 In United States v. Scivola, 766 F.2d 37 (1st Cir.1985), the defendant was charged with perjury and conspiracy to commit perjury arising out of testimony given at a prior trial. The defendant wanted to testify in his own defense as to the perjury count but not as to the conspiracy count. The district court denied his motion to sever, and the defendant elected not to testify at all. He was convicted on the perjury count but acquitted on the conspiracy count. The court of appeals affirmed the perjury conviction, using the following language in distinguishing Cross from the case before it:
 
 
 28
 "In this case, however, defendant chose not to testify. Thus, the claimed prejudice that he suffered was a result of testimony that he possibly would have given ... but that he chose not to give because of its potential effect on the conspiracy count. Yet, to date, defendant has not explained what testimony he would have given and how that testimony would have affected the jury's decision on the perjury count. Thus, any determination that defendant suffered prejudice would be purely speculative on our part." 766 F.2d at 42 (footnote omitted).
 
 
 29
 The Scivola court noted that the court which decided Cross has itself declared that "a defendant must make a convincing showing that 'he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." Scivola, 766 F.2d at 43 (quoting Baker v. United States, 401 F.2d 958, 977 (D.C.Cir.1968), cert. denied, 400 U.S. 965 (1970)). Lawrence has made no such showing in this case, and the district court did not abuse its discretion in refusing to sever the two counts.
 
 
 30
 Lawrence contends that there was insufficient evidence to support the conviction for growing marijuana, and that without the drug conviction he could not have been convicted of using a firearm during and in relation to a drug offense. But it was only with respect to the firearm charge that Lawrence moved for acquittal at the close of the government's case; he did not move for acquittal on the drug manufacturing charge. Where a defendant fails to move for acquittal at the close of all evidence, he waives any objection to the sufficiency of the evidence. United States v. Williams, 940 F.2d 176, 180 (6th Cir.), cert. denied, 116 L.Ed.2d 757 (1991). Even if there had been no waiver, moreover, we would have been constrained to reject the insufficient evidence claim. There were marijuana plants growing in Lawrence's attic, kitchen, and back yard, after all, and the attic was equipped with grow lights, electric timers and plant food. A reasonable jury could surely conclude beyond a reasonable doubt, as the jury in this case did, that Lawrence was engaged in growing marijuana.
 
 
 31
 Lawrence contends that the district court erred by not allowing him to talk about acceptance of responsibility without promising that his words could not be used against him. He relies, in this connection, on United States v. Perry, 788 F.2d 100 (3d Cir.), cert. denied, 479 U.S. 864 (1986). His reliance on Perry is misplaced.
 
 
 32
 The defendant in Perry, was subjected to the possibility of pretrial detention pursuant to 18 U.S.C. § 3142(e). Under the facts of that case, the statute shifted the burden of production to the defendant to show that he was not a danger to the community. The court concluded that where the statute shifted the burden of production to the defendant to avoid pretrial detention, the Fifth Amendment right not to be deprived of liberty without due process came into conflict with the right against self-incrimination. Because the Supreme Court has "long recognized that the courts may prevent the use at trial of testimony by a defendant that was necessary for the vindication of a constitutional right," the court of appeals held that the defendant's pretrial testimony should be immunized from use at trial. Id. at 115-116.
 
 
 33
 In the present case, by contrast, the several clauses of the Fifth Amendment are not in conflict. Lawrence's Fifth Amendment right not to be deprived of liberty without due process was in no way affected by the district court's refusal to immunize his statements to a probation officer. Lawrence was convicted by due process of law; he does not have the right to liberty after conviction that the Perry defendant had before conviction. Because Lawrence's statements to the probation officer were not required to vindicate a constitutional right, there is no reason under the Fifth Amendment why his statements should have been immunized.
 
 
 34
 Finally, Lawrence contends that the district court erred at sentencing by refusing to grant a two-level reduction in offense level for acceptance of responsibility. Lawrence offered to plead guilty to the drug count. The government, apparently concluding that this was a case it could not lose, was not interested in plea bargaining on the drug count. Lawrence chose to put the government to its proof on the firearm count, and he lost. Even if he had pleaded guilty to both counts, it would have been within the discretion of the district court to deny him the reduction. We see no abuse of that discretion here.
 
 
 35
 The conviction and sentence are AFFIRMED.